UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MSP RECOVERY CLAIMS, SERIES LLC, et al.,** | Civil Action No. 21-20451 (ES) (MAH) |
| Plaintiffs, | |
| v. | OPINION |
| **CELGENE CORPORATION, et al.,** | |
| Defendants. | |

I. **INTRODUCTION**

This matter comes before the Court on the motions to sever by Defendants Chronic Disease Fund ("CDF") and Patient Access Network Foundation ("PANF") (collectively the "Charity Defendants"). D.E.s 147 & 148. Plaintiffs oppose the motions. Pls.' Opp'n, D.E. 162. The Court held oral argument on these motions on April 5, 2023. For the reasons set forth below, the Court will deny the Charity Defendants' motions.

II. **BACKGROUND**

Plaintiffs, MSP Recovery Claims, Series LLC; MSPA Claims 1, LLC; MAO-MSO Recovery II, LLC, Series PMPI, a segregated series of MAO-MSO Recovery II, LLC; MSP Recovery Claims Series 44, LLC; MSP Recovery Claims PROV, Series LLC; and MSP Recovery Claims CAID, Series LLC ("Plaintiffs"), bring this action on behalf of themselves and a class comprised of Medicare Advantage Health Plans ("Class Members") against Celgene Corporation and Bristol-Myers Squibb Company ("Celgene Defendants"), and the Charity Defendants. Sec. Am. Compl., D.E. 71, at 1. Plaintiffs allege that the Celgene Defendants engaged in an anticompetitive scheme to monopolize the market for Thalomid and Revlimid (the

"Drugs") by impeding their competitors' efforts to develop and secure United States Food and Drug Administration ("FDA") approvals for generic versions of the Drugs. *Id.* at 1-6. Plaintiffs allege that in furtherance of this anticompetitive scheme, the Celgene Defendants: (1) manipulated safety protocols to justify refusing to provide samples to potential generic competitors; (2) blocked ingredient suppliers from providing active pharmaceutical ingredients ("API") to potential generic competitors; (3) obtained fraudulent patents for the Drugs and their related safety protocols; (4) filed unfounded citizen petitions with the FDA to delay and prevent generic approvals; (5) routinely filed "sham" patent infringement lawsuits; and (6) settled those lawsuits through anticompetitive reverse payment agreements that: (a) delayed the entry of lenalidomide; (b) allocated the market for lenalidomide between themselves and their generic competitors, and (c) delayed generic competition until 2026 (hereinafter "anticompetitive scheme" or "antitrust scheme"). *Id.* Plaintiffs contend that the Celgene Defendants' anticompetitive scheme violates federal and states' antitrust laws, consumer protection laws, state monopolization laws, unfair/deceptive trade practices law, and unjust enrichment law (hereinafter "antitrust claims"). *Id.* at 140-167.

    Plaintiffs also allege that as part of the anticompetitive scheme, the Celgene Defendants funneled money through the Charity Defendants to cover the cost of the Drugs on behalf of Medicare enrollees (hereinafter "co-pay scheme" or "co-pay claims"). That practice, Plaintiffs claim, allowed the Celgene Defendants to preserve monopolies on treatments. *Id.* at 4, 122-135. Plaintiffs aver that the Celgene Defendants circumvented congressionally mandated co-pays intended to stabilize market prices among patients and to prevent medically unnecessary treatment. *Id.* at 1-2, 122-135. By eliminating the co-payment requirements for those Medicare

beneficiaries, Plaintiffs maintain that they and the putative class members were forced to pay more for prescriptions of the Drugs, rather than the less expensive generic equivalents. *Id.*

Plaintiffs bring a total of eight claims, five against all Defendants and three solely against the Celgene Defendants. *Id.* at 140-167. The breakdown of Plaintiffs' claims is as follows:

Claims Against All Defendants -

- **Count II** – Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c) Through the Use of the Co-Payment Charity Scheme

- **Count III** – Violation of RICO 18 U.S.C. § 1962(d) Through the Co-Payment Circumvention Enterprise

- **Count VI** – Unfair and Deceptive Trade Practices Under State Law[1]

- **Count VII** – Unjust Enrichment Under State Law[2]

- **Count VIII** – Violations of the Civil Remedies for Criminal Practices Act, Fla. Stat. 77101, *et seq*.

Claims Against Only the Celgene Defendants -

- **Count I** – Declaratory and Injunctive Relief Under Section 16 of the Clayton Act for Celgene's Violations of Section 2 of the Sherman Act

- **Count IV** – Monopolization and Monopolistic Scheme under State Law[3]

- **Count V** – Attempted Monopolization Under State Law[4]

---

[1] The following state laws are implicated: California, Connecticut, Florida, Illinois, Massachusetts, Michigan, New York, Ohio, Rhode Island, and Wisconsin, as well as those of Puerto Rico.

[2] All state and United States territorial laws are implicated except for Ohio and Indiana.

[3] The same state and territory laws as set forth in footnote 1.

[4] The same state and territory laws as set forth in footnote 1.

*Id.* Plaintiffs bring Counts II, III, and VIII on behalf of themselves and Class Members. *Id.*

The Charity Defendants now move to sever Counts II, III, VI, VII, and VIII of Plaintiffs' Second Amended Complaint. *See* Motions to Sever, D.E.s 147 & 148.[5] The Charity Defendants propose that there be two new actions: (1) an action consisting of the co-pay claims against both the Celgene and Charity Defendants, and (2) another solely against the Celgene Defendants on the antitrust claims. Defs.' Br. in Supp., D.E. 147-1, at 1. The Charity Defendants argue that the Court should sever Plaintiffs' claims against them because the instant action contains two distinct sets of claims, and the Charity Defendants will suffer prejudice if they are forced to litigate the co-pay claims against them in the same case as the antitrust claims against the Celgene Defendants. *Id.* at 5-10, 13-14. Additionally, the Charity Defendants contend that severance will facilitate judicial economy. *Id.* at 10-13.

Plaintiffs maintain that all of their claims arise out of the same transaction or occurrence because all of the claims arise from or relate to the co-pay scheme. Pls.' Opp'n, D.E. 162, at 6-12. Plaintiffs allege that "the Charity Defendants were critical to and an inextricably intertwined part of the successful execution of Celgene's antitrust schemes." *Id.* at 1. Plaintiffs also assert that they will suffer prejudice if the motion to sever is granted and severance will hinder judicial economy. *Id.* at 12-20.

---

[5] The Charity Defendants submit one joint brief in support of each of their motions, albeit twice. For ease of reference, the Court will refer to the Brief in Support of the Motions to Sever at D.E. 147-1. In reply, the Charity Defendants similarly file duplicate briefs, D.E. 164 & 165. Again, for ease of reference the Court will cite to only one, D.E. 164.

In reply, the Charity Defendants reiterate their arguments and add that Plaintiffs must do more than satisfy the "transaction or occurrence" test to avoid severance. Reply, D.E. 164, at 2-10. The Celgene Defendants do not oppose the instant motions.[6]

### III. LEGAL STANDARD AND ANALYSIS

Rules 18 through 21 of the Federal Rules of Civil Procedure address the joinder of multiple claims and parties into a single action. These Rules grant district courts considerable discretion and flexibility in managing and structuring civil litigation. Rule 20 addresses the permissive joinder of parties. A party may join additional plaintiffs and/or defendants into an action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all [plaintiffs or defendants] will arise in the action." Fed. R. Civ. P. 20(a)(1) and (2). Rule 20 further provides that parties in a multi-litigant action need not be perfectly aligned with respect to the claims at issue. Rather, "[t]he court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities." Fed. R. Civ. P. 20(a)(3). "The court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." Fed. R. Civ. P. 20(b).

---

[6] On September 23, 2022, the Charity Defendants filed a pre-motion letter seeking leave to file a motion to sever. D.E. 123. The Celgene Defendants filed a letter in response indicating that they would not oppose the Charity Defendants' motion. D.E. 126.

Rule 21 prescribes that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. Under Rule 21, a court also may sever permissively joined claims to avoid prejudice, promote efficiency, and avert prejudice. *Lopez v. City of Irvington*, No. 05-5323, 2008 WL 565776, at *2 (D.N.J. Feb. 28, 2008). An order severing claims has the effect of "transform[ing] the claims into an entirely independent action with an independent case number and an independent judgment." *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc.*, 49 F. Supp. 2d 709, 720-21 (D.N.J. 1999); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) ("[W]hen a court 'severs' a claim against a defendant under Rule 21, the suit simply continues against the severed defendants in another guise.").

On a motion to sever, a court must first determine whether the movant has satisfied the "same transaction" and "common question" elements outlined in Rule 20 (a)(1). *Hannah v. Johnson & Johnson Inc.*, No. 18-10319, 2020 WL 3497010, at *6 (D.N.J. June 29, 2020). That determination is a case-by-case inquiry. *Id.* "Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Lopez*, 2008 WL 565776, at *2 (internal quotation marks omitted) (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). The common-question element "does not require precise congruence of all factual and legal issues; indeed, joinder may be permissible if there is but one question of law or fact common to the parties." *Id.* Once a court has resolved these threshold issues, it may consider additional factors in deciding whether to grant a motion to sever, such as:

> (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require

>the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted.

*Bayshore Recycling Corp. v. ACE Am. Ins. Co.*, No. 19-21618, 2020 WL 1986486, at *1 (D.N.J. Apr. 27, 2020); *see also Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc.*, 49 F. Supp. 2d 709, 721 (D.N.J. 1999) ("The decision to sever a claim or to try it separately is left to the discretion of the trial court."). The Court's analysis of these factors leads it to conclude that it is not presently appropriate to sever the claims against the Charity Defendants.[7]

### A. Same Transaction/Common Question

The Charity Defendants assert that the antitrust claims and co-pay claims are so distinct that they do not arise out of the same transaction or occurrence because they do not derive from "a common nucleus of operative facts." Defs.' Br. in Supp. at 7. The Charity Defendants contend that the testimonial and documentary evidence for the two sets of claims will be entirely distinct, and that each set of claims presents different legal issues. *Id.* at 5-7. Specifically, for the co-pay claims, Plaintiffs will need to prove the donations to the Charity Defendants are a predicate act under RICO for both the federal and state RICO claims. *Id.* at 8-9. On the other hand, with respect to the antitrust claims, Plaintiffs will be required to prove anticompetitive conduct and monopoly power in the relevant market to prevail under the Sherman Act. *Id.*

---

[7] Although the Charity Defendants move to sever the claims against them for all purposes, the Court considers these motions to sever for pretrial purposes only. At this stage of the litigation where motions to dismiss are still pending and discovery is in its nascent stages, it would be premature to pass upon whether it is appropriate to sever the claims against the Charity Defendants for trial purposes. Thus, this Court will deny the motions to sever without prejudice to any party's right to file a motion to sever for purposes of trial.

Plaintiffs respond that the overarching theory of their case is that the Celgene Defendants engaged in an anticompetitive scheme to block generics in the market and continually raise the prices for the Drugs. Pls.' Opp'n, at 2, 6. Plaintiffs maintain that the co-pay claims are "not just a critical factor in Celgene's overall anticompetitive scheme, but arguably the most important factor, without which Celgene could not have sold its drugs at supra-competitive prices." *Id.* at 6. Plaintiffs aver that, as the masters of their complaint, their theory is that the antitrust claims and co-pay claims "go hand in hand." *Id.* at 9. Particularly, the co-pay scheme was another method for allowing Celgene to raise its prices to "supra-competitive levels" without having to consider price sensitivity. *Id.* Plaintiffs maintain that the Celgene Defendants were able to exclude generics from the market via their antitrust schemes, such as refusing samples to generic competitors and initiating sham litigation. *Id.* at 9-10. According to Plaintiffs, these alleged acts of exclusion enabled the Celgene Defendants to raise the prices of the Drugs repeatedly. *Id.* But they also posed the risk that the drugs would become increasingly unaffordable for patients. *Id.* Thus, Plaintiffs claim that the next step in the Celgene Defendants' anticompetitive scheme was to funnel money through the Charity Defendants so that they could eliminate co-pays, causing Plaintiffs to pay the remaining cost of the drugs. *Id.* In support of this theory, Plaintiffs rely on the Congressional Drug Pricing Report they attach to their Second Amended Complaint, which states "[a]s drugs neared the end of their exclusivity periods, several companies combined patient assistance programs with other loss-of-exclusivity strategies. . . to limit competition." *Id.* at 9. Accordingly, Plaintiffs assert that their antitrust claims and co-pay claims all arise out of the same transaction or occurrence. *Id.* at 12. Moreover, Plaintiffs argue that antitrust and RICO claims frequently are analyzed together. *Id.* at 11.

In reply, the Charity Defendants contend that Plaintiffs miss the mark in relying solely on the transaction or occurrence test. Reply, D.E. 164, at 3-4. They contend that Plaintiffs failed to address a factor a Court may consider in determining whether to sever claims, *i.e.*, whether the issues sought to be tried together are significantly different. *Id.* They maintain that this factor weighs in favor of severance as the issues are significantly different and require different proofs. *Id.* at 4-6.

### 1. *Same Transaction, Occurrence, or Series of Transactions or Occurrences*

Having considered the parties' arguments and the applicable law, this Court finds that Plaintiffs' antitrust and co-pay claims against all Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences. The co-pay claims are, on the face of the Second Amended Complaint, part and parcel of the alleged anticompetitive scheme by the Celgene Defendants to reduce or prevent generics entering the marketplace, and raise the cost of the Drugs repeatedly to maximize profit. The Second Amended Complaint posits that funneling money through the Charity Defendants allowed the Celgene Defendants to maximize profits unimpeded by the supra-competitive prices charged for the Drugs. The Second Amended Complaint asserts that these activities were related and inextricably interwoven. *See, e.g.*, Sec. Am. Compl., ¶¶ 502-570. The common thread in Plaintiffs' claims is the Celgene Defendants' desire to keep generics out of the market via their antitrust scheme, and their concomitant use of the co-pay scheme to increase Drug prices without negatively impacting the Celgene Defendants' market reach. It is not determinative that not all of the same facts and claims are alleged against all Defendants. There is no requirement that all of the factual and legal issues be identical. *See Yue v. Lor*, Civ. No. 20-5099, 2021 WL 1712279, at *3 (D.N.J. Apr. 29, 2021)

(Rule 20 "does not require precise congruence of all factual and legal issues; indeed, joinder may be permissible if there is but one question of law or fact common to the parties."). Instead, it is enough that Plaintiffs' central theme in both the antitrust and co-pay claims is that the Celgene Defendants sought to reduce competition in the market, and one means by which they did so while also implementing price increases was through the co-pay scheme. Thus, the theory and allegations behind the co-pay claims are not significantly different from the antitrust claims. Instead, the co-pay claims are an extension of the alleged antitrust scheme. Plaintiffs contend that the co-pay scheme was necessary to allow Celgene to raise prices without sacrificing sales numbers, because it sought to eliminate or reduce patient and doctor price sensitivity. Therefore, the Court concludes that these are issues common to both the co-pay claims and the antitrust claims, and there is significant overlap between the two sets of claims. And further, Plaintiffs' theory of the case is controlling here. *See Hereford v. Broomall Operating Co. LP*, 575 F. Supp. 3d 558, 564 (E.D. Pa. 2021) ("But a defendant does not have the right to dictate the manner in which a plaintiff litigates the case.").

The 2021 Congressional Drug Pricing Report provides further support for the conclusion that the co-pay and antitrust claims arise from the same transaction or occurrence. *See* Sec. Am. Compl., Exh. B, D.E. 71-2, at PageID: 1969. The Congressional Drug Pricing Report suggests that pharmaceutical manufacturers used patient assistance programs, like those Plaintiffs allege Celgene used in conjunction with the Charity Defendants, to improperly reduce competition. *Id.* ("As drugs neared the end of their exclusivity periods, several companies combined patient assistance programs with other loss-of-exclusivity strategies...to limit competition."). Thus, the co-pay claims asserted against the Charity Defendants can reasonably be said to arise out of the

same series of transactions or occurrences. Therefore, this Court finds that the allegations in the Second Amended Complaint arise from the same transaction, occurrence, or series of transactions or occurrences.

### 2. *Common Questions of Law and Fact*

The Court also concludes that there are common questions of law and fact. First, the Second Amended Complaint pleads five counts that are common to all Defendants. *See* Sec. Am. Compl., D.E. 71, Counts II-III, VI-VIII. That alone suggests that there are common issues of law or fact such that severance is inappropriate. See *Yue*, 2021 WL 1712279, at *3. And although Plaintiffs bring two sets of claims—*i.e.*, the co-pay claims and the antitrust claims—the foregoing discussion establishes that common issues of fact and law exist as to how Defendants used the co-pay scheme in furtherance of the Celgene Defendants' antitrust scheme. The purported existence of a pattern of anticompetitive behavior is a question of fact and law common to all of Plaintiffs' claims. Moreover, RICO claims, as alleged in connection with the co-pay claims, and antitrust claims often are analyzed similarly. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267 (1992) ("Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act."); *see also McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir.1996) ("Significantly, antitrust standing principles apply equally to allegations of RICO violations.").

### B.     **Whether Issues are Significantly Different**

Having determined the threshold issues of whether Plaintiffs' claims arise from the same transaction or occurrence, and whether common questions of law and fact exist, this Court now considers whether the issues sought to be litigated separately are significantly different from one

another. *See Bayshore Recycling Corp.*, 2020 WL 1986484, at *1. The Court concludes that severing the claims against the Charity Defendants, for pretrial purposes, is not appropriate. It would require litigation of substantially the same issues in two different cases. Plaintiffs allege that the Celgene Defendants engaged in anticompetitive conduct, and that an important means by which they did so was through the co-pay scheme with the Charity Defendants. Those allegations give rise to Plaintiffs' antitrust and co-pay claims. To sever them for pretrial purposes would invite significantly overlapping discovery and, almost inevitably, discovery disputes, and multiply these proceedings, such as to needlessly delay the adjudication of the claims on their merits. *See Picozzi v. Connor*, No. 12-4102, 2012 WL 2839820, *5 (D.N.J. July 9, 2012) (noting that Court's discretion under Rules 20 and 21 to facilitate convenience and judicial economy).

      **C.    Witnesses and Documentary Proof**

Next, the Court considers whether the issues sought to be severed require different testimony and documentary evidence. *See Bayshore Recycling Corp.*, 2020 WL 1986486, at *1. Plaintiffs' antitrust claims are broader than the co-pay claims, and so will likely entail testimony and documentary evidence beyond that necessary for the co-pay claims. For example, the evidence that Plaintiffs introduce to prove their allegations concerning the Celgene Defendants' use of the REMS testing protocols to avoid providing samples of Thalomid and Revlimid to generic manufacturers likely will not overlap with the co-pay scheme. Similarly, much of the evidence concerning the alleged "sham" patent lawsuits and settlements will not involve the co-pay scheme. But to the extent this consideration factors into a question of pretrial severance, it does not favor severance. The foregoing discussion establishes that the allegations underlying

the co-pay claims are sufficiently intertwined with the overall antitrust scheme such that the co-pay and antitrust claims likely will require a significant amount of overlapping testimonial and documentary evidence. Just by way of example, Plaintiffs and Defendants likely will need to depose certain witnesses, *e.g.*, Celgene's Rule 30(b)(6) witnesses and others, regarding the pricing of Thalomid and Revlimid, Celgene's understanding of market reaction to price changes and whether patients experienced difficulties in meeting their co-payment obligations and, if so, whether Celgene took any action in response, as well as the agreements between Celgene and the Charity Defendants.

### D. Judicial Efficiency

The Charity Defendants contend that severance will promote more efficient management of the co-pay claims and class discovery, while also facilitating more streamlined management of the antitrust claims. Defs.' Br. in Supp., D.E. 147-1, at 10-11. Plaintiffs argue this Court has already noted the numerous case management problems that might result if the Court severed the co-pay claims. Pls.' Opp'n, D.E. 162, at 12-18.

This Court finds that in light of the overlapping factual and legal issues involved in Plaintiffs' claims, severance would not promote judicial efficiency. To the contrary, severance would hinder the efficient management of these matters in several respects, and pose scant benefit to the Court. First, it would invite discovery disputes concerning relevance, and more specifically whether particular discovery requests are more in the co-pay discovery bucket, or the antitrust discovery bucket. Relatedly, it could cause confusion and waste, as the parties produce, and then re-produce, the same or overlapping discovery in multiple cases, and deconflict whether and what discovery has been served on the other parties. Moreover, consideration of the

Plaintiffs' claims on the merits, whether in summary judgment motion practice or at trial, almost certainly will require that fact and expert discovery be completed as to both sets of claims.

Similar reasoning underscored this Court's denial of the Charity Defendants' request to stay discovery pending resolution of their motions to dismiss, and the subsequent Pretrial Scheduling Order. When the Charity Defendants argued to stay discovery, they argued in part:

> The allegations against PAN and Good Days are that they accepted donations from Celgene that were supposedly illegal. These allegations which could be the copay assistance allegations do not overlap with the anti-trust allegations. They involve different documents. They involve different witnesses entirely.

Transcript of Aug. 29, 2022 Conference, D.E. 113 (Civ. No. 21-20451), at 28:12-17. The Court carefully considered the Charity Defendants' argument, but denied their request to stay. The Court reasoned that the co-pay and antitrust claims are sufficiently intertwined that much of the discovery would overlap, and that disputes concerning which discovery pertains to which set of claims would cause confusion, inefficiency and delay. In the Pretrial Scheduling Order, the Court stated:

> The class claims, co-pay RICO allegations, and the existence of the Charitable Defendants in this matter, warrant a separate discovery plan [than the one in the cases consolidated for pretrial purposes under *In re Revlimid & Thalomid Purchaser Antitrust Litigation*, Civil Action No. 19-7532 (ES)]. However, the Court intends for this case to be on a parallel track, not an entirely different one. A parallel track with a uniform schedule in this matter best ensures that discovery moves forward efficiently, and avoids intractable case-management difficulties. For example, it would be difficult for the parties to ascertain which discovery concerns solely the antitrust allegations, and which discovery concerns the charitable co-pay claims, and Defendants' proposal would invite disputes about whether the discovery sought is actually for the other claims. As Plaintiffs observe, the cases all allege conduct concerning the same pricing decisions during the same timeframe, and involving the same drugs.

Pretrial Scheduling Order, D.E. 137, at 2 n.1.  In sum, the Court finds this factor weighs against severing Plaintiffs' claims against the Charity Defendants.

### E. Prejudice

The Charity Defendants argue that the claims against them must be severed or they will suffer "spillover" prejudice from being associated with Celgene's alleged "other bad acts." Defs.' Br. in Supp., D.E. 147-1, at 13.  Plaintiffs maintain that any potential prejudice to the Charity Defendants is purely conjectural at such an early stage of the litigation, while Plaintiffs will suffer actual prejudice if the claims are severed.  Pls.' Opp'n, D.E. 162, at 18-20. Specifically, Plaintiffs contend that if severed, they will encounter duplicative litigation costs, discovery requests, and discovery disputes, as well as delay in prosecuting their claims and interference with their theory of the case that Celgene implemented a "full-court press of anticompetitive conduct."  *Id.* at 19.

The Court understands the Charity Defendants' concerns, but does not find that those concerns rise to a showing that prejudice is likely.  In complex multi-party litigation, it is often the case that certain discovery requests apply to only some of the parties and not others.  To the extent the Charity Defendants are concerned that Plaintiffs might seek discovery from them outside of the co-pay claims, *see* Reply, D.E. 164, at 9, the Charity Defendants will have the opportunity to object and, after meaningful meet-and-confer efforts, seek Court intervention. Further, in an effort to minimize any potential prejudice to the Charity Defendants, the Court entered a separate scheduling order in this matter so that it can be handled on a track that is parallel to the six cases consolidated in the *In re Revlimid and Thalomid* litigation.  Pretrial

Scheduling Order, D.E. 137, at 2, n.1.[8] The Court sees no reason to change course now. Accordingly, the Court discerns no material prejudice to the Charity Defendants in declining to sever the claims against them at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motions to Sever. D.E.s 147 & 148. An appropriate Order will follow.

*s/ Michael A. Hammer*
**United States Magistrate Judge**

**Dated: April 26, 2023**

---

[8] To the extent the Charity Defendants argue that they will suffer spillover prejudice from the Celgene Defendants' alleged bad acts, the Charity Defendants will have the opportunity to seek severance for trial at the motion in limine stage.