UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC; MSPA CLAIMS 1 LLC; MAO-MSO RECOVERY II LLC; MSP RECOVERY CLAIMS SERIES 44 LLC; MSP RECOVERY CLAIMS PROV, SERIES LLC; MSP RECOVERY CLAIMS CAID, SERIES LLC; SERIES PMPI, <br><br> Plaintiffs, <br><br> v. <br><br> CELGENE CORPORATION; BRISTOL-MYERS SQUIBB CORPORATION; PATIENT ACCESS NETWORK FOUNDATION; CHRONIC DISEASE FUND d/b/a GOOD DAYS FUND, <br><br> Defendants. | Civil Action No. 21-20451 (ES) (MAH) <br><br><br> OPINION |

**Hammer, United States Magistrate Judge**

This matter comes before the Court by way of the objections of MSP Recovery Claims Series LLC ("MSP") and related plaintiff entities (collectively, "MSP" or "Plaintiffs") to the Special Discovery Master's Report and Recommendation No. 1, which was filed on December 22, 2023, D.E. 259 (hereinafter "R&R No. 1"). The Court has considered MSP's objections to the Report and Recommendation [D.E. 262-263], and Defendants' response to MSP's objections [D.E. 265]. The Court held oral argument on the objections on March 28, 2024. For the reasons set forth herein, the Court will affirm the Special Discovery Master's recommendations, and order MSP to produce full custodial discovery from each of the assignors.

I.       **Background**

Plaintiffs are a series of entities that claim to have been assigned the rights to pursue this litigation against Defendants on behalf of approximately fifty-two healthcare plans.[1]  *See, e.g.*, Second Amended Complaint, May 27, 2022, D.E. 71 ("SAC"), at ¶¶ 21-31.  According to the Second Amended Complaint, the assignor healthcare plans paid the pharmaceutical claims for those enrollees who were prescribed Revlimid and Thalomid.  *Id.* at ¶ 32.  MSP asserts that the Defendants have blocked generic competitors from entering the market through sham patent litigation, the abuse of Celgene's risk evaluation and mitigation strategies ("REMS") protocols, refusal to sell samples to generic manufacturers, and have caused the assignors to pay inflated prices for those prescriptions.  *Id.*  MSP seeks relief on behalf of the healthcare plans for, *inter alia*, violations of the Sherman Act, 15 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and state law.

At issue before the Special Discovery Master was whether MSP should be required to produce to Defendants full discovery, including the utilization of search terms and custodial searches, from each of MSP's fifty-plus assignors.  MSP proposed that it would be sufficient for it to produce full discovery from two of the assignors, specifically AvMed Inc. and Fallon Community Health Plan Inc.  MSP proposed that after it produced that discovery, Defendants could request specific discovery from specific assignors, or so-called "go get" discovery.

---

[1] Plaintiffs have provided inconsistent totals for the number of healthcare-plan assignors. Before the Special Discovery Master, Plaintiffs asserted that there were fifty-two assignors. R&R No. 1 at 2; Joint Discovery Dispute Letter, June 22, 2023, D.E. 201, at 6-7; *id.* Ex. A (MSP's Rule 26 disclosures identifying fifty-two assignors).  In its objections, however, MSP asserts that there are fifty-six assignors.  Plaintiffs' Objections to the Special Master Report, D.E. 262, at 1-2.  MSP fails to explain the discrepancy.  For purposes of deciding MSP's objections, the inconsistency is not material.

The Special Discovery Master considered the parties' arguments on this dispute, including both the filings made to this Court, *i.e.,* D.E. 201, 217, and 229, and the parties' submissions directly to her. The Special Discovery Master held a hearing on this and other disputes on December 4, 2023. R&R No. 1 at 2 n.1. The Special Discovery Master noted that MSP's claims in this matter are predicated on its "capacity as the assignee of the claims of 52 health plans and other entities (the "assignors")." *Id.* at 2. The Special Discovery Master noted that two courts in the District of New Jersey have rejected similar arguments by MSP to limit discovery on behalf of assignors, and have required MSP to produce discovery from all of the assignors. *Id.* at 2-3 (citing *MSP Recovery Claims Series, LLC v. Abbott Laboratories*, No. 19-21607, 2022 WL 11804007 (D.N.J. Oct. 17, 2022); *MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 18-2211, 2021 WL 4306866 (D.N.J. Sept. 22, 2021). The Special Discovery Master concluded that MSP's arguments in this case were not materially different than those that the courts in *Sanofi-Aventis* and *Abbott Laboratories* had rejected. *Id.* at 3. Additionally, the Special Discovery Master reasoned that MSP's offer of the "go get" discovery was an insufficient substitute for full discovery from the assignors, in the absence of any legal justification to relieve MSP of the discovery obligation "that *any other plaintiffs would have*." *Id.* (emphasis in original).

## II.     MSP's Objections to R&R No. 1

MSP contends that the Special Discovery Master did not adequately address the proportionality of the Defendants' requests. Plaintiffs' Objections to the Special Master Report, D.E. 262, at 8, 10 (hereinafter "Plaintiffs' Objections"). MSP contends that rather than produce full discovery for all assignors, considerations of proportionality under Federal Rule of Civil Procedure 26(b) should require Defendants to review the "go get" documents for the fifty-plus

3

assignors for which it has not produced full discovery, determine whether additional documents should be produced, articulate the relevance of that additional production, and issue specific requests to MSP, which will then seek the documents from the particular assignor(s). *Id.* at 2. MSP avers that particularly in complex civil cases, courts should, and regularly do, implement "special procedural mechanisms" such as sampling in the form of bellwether or representative plaintiffs. *Id.* at 12. MSP argues that such an approach is appropriate in this case, because it is the assignee for fifty-six similarly situated healthcare plans. MSP represents that although the healthcare plans are similarly situated, they have varying degrees of document accessibility and technological capabilities. *Id.* at 13. Relying on a declaration from the eDiscovery vendor that MSP retained in this case, MSP avers that custodial collections from each assignor are "significantly more expensive" than the targeted "go get" discovery that the MSP Entities propose. Decl. of Cheryll A. Calderon, Jan. 9, 2024, D.E. 263 ("Calderon Decl."), at ¶ 11. Relatedly, MSP complains that the Special Discovery Master's reliance on *Sanofi-Aventis* and *Abbott Labs.* was flawed because neither of those cases contemplated the discovery approach that MSP proposes here.

### III.     Analysis

Pursuant to Federal Rule of Civil Procedure 53(f), this Court reviews the Special Discovery Master's factual findings and conclusions of law de novo. Fed. R. Civ. P. 53(f)(3) & (4). *See also* Order Appointing Special Discovery Master, Sept. 15, 2023, D.E. 232, at ¶ 10 ("Order of Appointment"). Rulings on procedural matters will be reviewed for an abuse of discretion. Fed. R. Civ. P. 53(f)(5); Order of Appointment at ¶ 10.

Federal Rule of Civil Procedure 26(b)(1) establishes that a party may obtain discovery regarding any matter that is relevant to the subject matter of the case and that is not privileged.

The purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings and thus the boundaries of relevance under Rule 26 depend upon the context of each action. *See Salamone v. Carter's Retail, Inc.*, No. 09-5856, 2011 WL 1458063, at *2 (D.N.J. Apr. 14, 2011), *accord Hickman v. Taylor*, 329 U.S. 495, 507 (1947). As a general matter, courts construe Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Rule 26 does not, however, permit the parties to "go fishing" and, in fact, "the trial court retains broad discretion to determine that a discovery request is too broad and oppressive." *Schneck v. IBM*, 1993 WL 765638, *2 (D.N.J. July 27, 1993) (quoting *Marshall v. Westinghouse*, 576 F.2d 588, 591 (5th Cir. 1978)). The 2015 amendments to Rule 26 reinforced that discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, "the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery—in order to successfully resist a motion to compel—specifically object and show that . . . a discovery request would impose an undue burden or expense or is otherwise objectionable." *Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017) (quoting *Mir v. L-3 Communications Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016)). *See also* Fed. R. Civ. P. 26, Advisory Committee Note to 2015 Amendment (instructing that the amendments were not intended to "permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional").

A proportionality analysis under Rule 26 requires the court to consider several factors, including:

> (1) the importance of the issues at stake in this action; (2) the amount in controversy;
> (3) the parties' relative access to relevant information; (4) the parties' resources;

>(5) the importance of discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Williams v. BASF Catalysts LLC*, No. 11-1754, 2017 WL 3317295, at *4 (D.N.J. Aug. 3, 2017). *See also Carusone v. Kane*, No. 16-1944, 2019 WL 5424333, at *1 (M.D. Pa. Oct. 23, 2019) ("In conducting a proportionality analysis, the court should begin by examining the significance of the controversy at issue, the parties' resources and access to information, and whether the burden or expense of complying with the discovery outweighs its benefit.").

It is well settled that the assignee of a claim bears the same discovery production obligations as if the assignor had initiated the litigation itself. *Sanofi-Aventis*, 2021 WL 7837251, at *3; *Abbott Laboratories*, 2022 WL 11804007, at *4 (quoting *Sanofi-Aventis*, 2021 WL 7837251, at *3); *Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*, 314 F.R.D. 341, 344-45 (S.D.N.Y. 2016). As one district court reasoned, "[a]fter all, since the assignees are suing in the shoes of the original lenders, having purchased the right to bring the lawsuit, there is nothing unfair about imposing on them the cost of purchasing cooperation or otherwise complying with discovery obligations." *J.P. Morgan Chase Bank v. Winnick*, 228 F.R.D. 505, 507 (S.D.N.Y. 2005).

MSP recognizes as much. MSP acknowledges that "an assignee-plaintiff has an obligation to produce discovery as to its assignor to the extent the defendant would be entitled to such discovery had the assignor brought the action itself." Plaintiffs' Objections at 1. Their attempt to walk back that basic discovery principle on the basis of proportionality is unpersuasive, and the Court overrules their objections.

As the Special Discovery Master fairly noted, two separate judges in the United States District Court for the District of New Jersey have rejected similar requests by MSP to limit assignor discovery. In *Sanofi-Aventis*, MSP was the assignee for fifty-seven healthcare plans.

2021 WL 4306866, at *1.  There, as here, the defendants sought full discovery concerning those healthcare plans that had assigned their claims to MSP.  MSP contended that requiring discovery from each of those fifty-seven assignors would be costly and disproportional.  *Id.* at *4.  The court denied MSP's objections to the special master's recommendations, and required MSP to produce the discovery on behalf of all of the assignor healthcare plans.  *Id.* at *5.

In *Abbott Laboratories*, MSP sought to produce "representative discovery" from a subset of the numerous assignors alleging third-party overpayment for insulin test strips because of a fraudulent pricing scheme.  2022 WL 11804007, at *2.  Defendants sought full discovery on behalf of each assignor.  Relying on *Sanofi-Aventis*, the court found that "Plaintiffs have an obligation [to] produce any documents and information as to each Assignor to which Defendants would be entitled under the Federal Rules of Civil Procedure to the same extent as if each Assignor brought this action themselves." *Id.* at *4.

MSP's arguments fare no better here.  Both in its brief and through the Declaration from Cheryll A. Calderon, MSP chiefly argues that production of relevant discovery from such a large number of assignors would be difficult, even as MSP itself made the decision to represent those assignors in this litigation, and even as MSP itself acknowledges the obligation to produce discovery from those assignors to the same extent as if those assignors brought these claims.  Plaintiffs' Objections at 1.  However, MSP does little to actually address the above-described proportionality factors.  In any event, application of those factors compels the conclusion that requiring the production of fulsome discovery as to all assignors is necessary and appropriate, and is not disproportionate to the needs of this litigation.

7

First, the controversy is significant.[2] MSP contends that Defendants have engaged in a wide-ranging anticompetitive scheme that included sham patent litigation, abuse of Celgene's REMS protocols, and refusal to sell samples to generic manufacturers, all to protect Celgene's market for Thalomid and Revlimid by stifling competition from generic manufacturers over the course of many years. *See, e.g.,* SAC at ¶¶ 1-2, 39, 118-120, 126-76, 470-72. According to the Second Amended Complaint, Defendants' conduct and resulting monopoly over the market for Thalomid and Revlimid not only caused healthcare plans such as the assignors in this case to suffer inflated costs to purchase Thalomid and Revlimid, *id.* at ¶¶ 10-12, 488-90, but also compromised "the safety program designed to protect patients from thalidomide and lenalidomide's teratogenic properties." *Id.* at ¶ 8.

The second factor—the amount in controversy—also supports requiring MSP to produce complete discovery for all assignors. Although the Second Amended Complaint does not plead a specific quantification of money damages, it alleges that more than fifty assignor-healthcare plans have suffered enormous monetary damages over the course of many years because of the Defendants' anticompetitive conduct. MSP seeks, among other things, disgorgement of Celgene's profits in an industry the product sales for which well exceed a billion dollars. MSP also seeks treble damages, punitive damages, and attorneys' fees against all Defendants under RICO, 18 U.S.C. §§ 1964(c), (d). *Id.* at ¶¶ 613, 626. Further, MSP seeks declaratory and injunctive relief against Celgene pursuant to the Sherman Act and Clayton Act, 15 U.S.C. § 26, that would require Celgene to cease, and take corrective actions for, its anticompetitive activity. *Id.* at ¶¶ 581-82.

---

[2] The Court's concludes that the controversy is significant solely in the context of the proportionality analysis under Rule 26(b), and not as a statement concerning the merits of either the claims or defenses in this matter.

The third and fourth factors similarly support requiring MSP to produce complete custodial discovery for all assignors. The discovery at issue in this case is uniquely within the possession of MSP and/or the assignors, and MSP does not argue to the contrary. For example, information concerning the scope, content, and timing of the assignments, which is necessary to assess MSP's standing to prosecute these claims, is exclusively within the possession of MSP and its assignors. Similarly, MSP and the assignors have sole control over any internal communications and other materials that might be probative of whether the alleged kickbacks that Celgene paid to Chronic Disease Fund and Patient Access Network as charitable donations deceived the healthcare plans. *Id.* at ¶¶ 549, 646. As concerns the parties' resources, it is true that Celgene is a large, well resourced corporation. However, Plaintiffs are sophisticated litigants that specialize in the litigation of assigned claims, and routinely represent dozens of healthcare plans in complex anticompetition and commercial litigation before this and other courts throughout the country, as reflected in *Sanofi-Aventis*, 2021 WL 4306866, at *1, *Abbott Laboratories*, 2022 WL 11804007, at *2, *MSP Recovery Claims, Series 44 LLC v. Zurich Am. Ins. Co.*, No. 22-5054, 2023 WL 8851153 (N.D. Ill. Aug. 15, 2023), *MSP Recovery Claims, Series LLC v. Safeco Ins. Co. of Am.*, 673 F. Supp. 3d 18 (D. Mass. 2023), and *MSP Recovery Claims, Series LLC v. Phoenix Ins. Co.*, 426 F. Supp.3d 458 (N.D. Ohio 2019).

The fifth factor strongly supports requiring MSP to produce complete custodial discovery for all assignors. MSP itself acknowledges its obligation to produce full discovery for the assignors as if those assignors themselves filed this action, and has already agreed to do so for AvMed Inc. and Fallon Community Health Plan Inc. Plaintiffs' Objections at 1. Moreover, MSP points to no specific flaw in the Special Discovery Master's reasoning based on relevance. Plaintiffs do not, for example, argue that they should not have to produce any

specific category of documents. Instead, MSP contends the Report and Recommendation did not adequately address proportionality and burden, or MSP's alternative "go get" proposal. *See, e.g.*, Plaintiffs' Objections at 8-9. Passing that the Special Master indeed considered and rejected the "go get" proposal, R&R No. 1 at 2-3, the Court is satisfied that the discovery is highly relevant to MSP's standing, as well as the claims and defenses in this litigation. For example, Defendants are entitled to know, as to each assignor, the scope, terms, and timing of the assignments. Defendants also are entitled to each assignor's transactional data that will be probative of issues such as damages, and how the relevant market that Celgene is alleged to have monopolized is defined, and whether the assignors were deceived by charitable donations to Chronic Disease Fund and Patient Access Network.

Finally, the likely benefit of full custodial discovery as to each assignor well exceeds the burden of producing it. Relying on Ms. Calderon's declaration, MSP projects that custodial discovery as to all assignor-healthcare plans will impose on it an additional $458,527.00 in costs. Calderon Decl. at ¶ 15. *See also* Plaintiffs' Objections at 7. By contrast, she estimates that a targeted self-collection of "go get" discovery would cost MSP only $25,000 to $35,000. *Id.* at ¶ 14. But the additional expenditures for fulsome discovery are hardly disproportionate in the context of the more than fifty assignors bringing these nationwide antitrust and RICO claims. As Defendants observe, on a per assignor basis, the costs break down to an additional approximately $9,000 in production costs and $2,100 in annual hosting charges. Those costs are hardly disproportionate in view of the number of claims and assignors in this action.

Moreover, Ms. Calderon's estimate for the targeted self-collection fails to account for several variables that might drive up the costs of completing written discovery under MSP's proposal. For one, given that MSP proposes "go get" discovery for at least fifty assignors

beyond AvMed Inc. and Fallon Community Health Plan Inc., it is difficult to predict with any reliability how many assignors would be involved in subsequent targeted discovery requests and collection, or the scope of documents that Defendants would have to seek. If, for example, Defendants required further discovery from thirty or more assignors, the costs presumably would be much higher than additional discovery from ten assignors. MSP and Ms. Calderon also fail to account for the distinct possibility that such subsequent discovery requests would result in disputes regarding the requests themselves, and the adequacy of the productions. Those disputes inevitably would drive up litigation costs, to MSP as well as Defendants, and delay the completion of discovery.

The caselaw on which MSP relies is unpersuasive, as it was in *Sanofi-Aventis*. MSP relies on *MAO-MSO Recovery II, LLC v. Mercury Gen'l Corp.*, No. 17-2525, 2019 WL 2619637 (C.D. Cal. May 10, 2019). But that court did not limit discovery as to only certain assignors, or hold that requiring plaintiffs to produce fulsome custodial discovery as to all assignors would be disproportionate under Rule 26. Instead, the plaintiffs in *MAO-MSO* represented that they had access to documents for only a limited number of the assignors. *MAO-MSO*, 2019 WL 2619637, at *3. The court required plaintiffs to produce all relevant documents that they possessed, as well as responsive "documents in their assignors' possession that [plaintiffs] have the legal right to obtain upon demand." *Id.* at *4. In short, *MAO-MSO* principally concerned an issue not raised here—*i.e.*, control of, and access to, the assignors' documents.

MSP's reliance on *Blackrock Balanced Capital Portfolio v. HSBC Bank USA*, No. 14-9366, 2016 WL 11187259 (S.D.N.Y. June 2, 2016), also is unavailing. *Blackrock Balanced Capital Portfolio*, much like *MAO-MSO*, principally concerned control over and access to

...

relevant discovery, not proportionality. In *Blackrock Balanced Capital Portfolio*, the defendants sought discovery concerning the prior holders of certificates of residential mortgage-backed securities trusts ("RMBS") that plaintiffs had purchased from HSBC. 2016 WL 11187259, at *1. Plaintiffs protested that the documents were not in their custody or control, and that they had no relationship with the prior owners. And unlike this case, in which the identities of the assignors are known, the RMBS certificates were traded anonymously and were not tied to any "unique identification number." *Id.* at *3. Therefore, identifying the prior certificate holders presented challenges that do not exist here. Even then, however, the court in *Black Rock Balanced Capital Portfolio* held that plaintiffs "bear the burden of obtaining third-party discovery from prior owners whose rights they intend to assert[,]" and allowed that third-party discovery might be necessary to establish that the prior owners had already relinquished their claims through settlement or otherwise. *Id.* Accordingly, the court required plaintiffs to serve subpoenas to identify prior certificate owners. To mitigate some of the burden of identifying the previous RMBS certificate owners, the court implemented a staged discovery process to allow the parties to ascertain the significance of that third-party discovery before proceeding with more fulsome third-party discovery.[3] *Id.*

---

[3] To the extent MSP argues that full custodial discovery as to all assignors is unduly burdensome, the Court disagrees for the same reasons it rejects MSP's proportionality argument. An undue-burden analysis under Rule 26(b)(2)(C) involves many of the same considerations as a proportionality analysis. For example, in *Trask v. Olin Corp.*, 298 F.R.D. 244, 265 (W.D. Pa. 2014), the court considered an assertion of undue burden. That court considered many of the same factors this Court has evaluated as part of the proportionality analysis, including "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at the present stage in the action, and the importance of the discovery in resolving the issues." *Id.* Therefore, MSP's arguments are no more availing if presented as a claim of undue burden than in the proportionality context. Further, "a party resisting discovery on the grounds of burden or expense 'bears the burden of showing specifically how the request is burdensome.'" *In re Mercedes-Benz Emissions Litig.*, No. 21-881, 2020 WL 747195, at *5 (D.N.J. Feb. 14, 2020) (quoting *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290,

**IV.     Conclusion**

For the reasons set forth above, Plaintiffs' objections to R&R No. 1 are overruled, and R&R No. 1 is affirmed.  MSP shall produce full custodial discovery from each of the assignors.

*s/ Michael A. Hammer*
**United States Magistrate Judge**

Dated:  March 28, 2024

---

2010 WL 4922701, at *3 (W.D. Pa. Nov. 29, 2010)).  Indeed, a party claiming undue burden bears a "heavy burden," and must support the undue-burden assertion with specific proof of that burden.  *Campbell v. Sedgwick, Detert, Moran & Arnold*, No. 11-642, 2012 WL 12898345, at *3 (D.N.J. Oct. 9, 2012) (quoting *Wyeth v. Abbott Laboratories*, No. 08-0230, 2011 WL 2429318, at *8 (D.N.J. June 13, 2011)).  As explained above, MSP's arguments and Ms. Calderon's declaration do not persuade the Court that requiring MSP to produce full custodial discovery for the assignors is either disproportionate or unduly burdensome.